LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff, FLSA Collective Plaintiffs
and the Class*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

---

STEPHANI GALVEZ CHAVEZ,
*on behalf of herself, FLSA Collective Plaintiffs
and the Class,*

                      Plaintiff,

                      v.

SEAMORE'S ON ICE LLC;
1270 3RD RESTAURANT LLC;
    d/b/a Seamore's
390 BROOME RESTAURANT LLC;
    d/b/a Seamore's
161 8TH AVE RESTAURANT LLC;
    d/b/a Seamore's
S OUT EAST LLC;
    d/b/a Seamore's
S UP TOP LLC;
    d/b/a Seamore's
S DOWN BELOW LLC;
    d/b/a The Hull Sports Bar
S BIG SWING LLC;
    d/b/a Seamore's
JAY WAINWRIGHT; and
MICHAEL CHERNOW;

                      Defendants.

Case No.:

**CLASS AND COLLECTIVE
ACTION COMPLAINT**

**Jury Trial Demanded**

---

      Plaintiff, STEPHANI GALVEZ CHAVEZ ("Plaintiff"), on behalf of herself and others similarly situated, by and through her undersigned attorneys, hereby files this Class and Collective

1

Action Complaint against Defendants, SEAMORE'S ON ICE LLC, 1270 3RD RESTAURANT LLC, 390 BROOME RESTAURANT LLC, 161 8TH AVE RESTAURANT LLC, S OUT EAST LLC, S UP TOP LLC, S DOWN BELOW LLC, and S BIG SWING LLC (collectively, "Corporate Defendants"), and JAY WAINWRIGHT and MICHAEL CHERNOW (collectively, "Individual Defendants" and together with Corporate Defendants, "Defendants"), states as follows:

## INTRODUCTION

1. Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), that she and others similarly situated are entitled to recover from Defendants (1) unpaid wages, including overtime compensation, due to time shaving, (2) liquidated damages and (3) attorneys' fees and costs.

2. Plaintiffs further alleges, pursuant to the New York Labor Law ("NYLL"), that he and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime compensation, due to time shaving, (2) unpaid spread-of-hours premium, (3) liquidated damages, (4) statutory penalties and (5) attorneys' fees and costs.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

4. Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391.

## PARTIES

5. At all relevant times herein, Plaintiff STEPHANI GALVEZ CHAVEZ was and is a resident of New York County, New York.

6. All Corporate Defendants are domestic business corporations organized under the

2

laws of the State of New York.

7. Defendants collectively own and operate a chain of restaurants under the trade name "Seamore's" at the following locations:

a. 1278 3rd Ave., New York, NY 10021 ("Upper East Side").

b. 250 Vesey Street (at North End Ave), New York, NY 10281 ("Brookfield Place").

c. 161 8th Ave (at 18th St), New York, NY 10011 ("Chelsea").

d. 66 Water Street, Brooklyn, NY 11201 ("Dumbo").

e. 66 Water Street, Brooklyn, NY 11201 ("The Hull Dumbo").

f. 152 W 52nd Street at Urbanspace, New York, NY 10019 ("W 52 Market").

(collectively, the "Restaurants")

8. Individual Defendants JAY WAINWRIGHT and MICHAEL CHERNOW also own a restaurant in Arlington, Virginia under the same brand name.

9. Defendants operate the Restaurants as a single integrated enterprise under the control of Individual Defendants JAY WAINWRIGHT and MICHAEL CHERNOW. Specifically, Defendants' Restaurants are engaged in related activities, share common ownership, and have a common business purpose.

(a) Defendants are engaged in the same business of operating restaurants in New York.
(b) Defendants' Restaurants are commonly owned and operated by both Individual Defendants:
(i) Individual Defendant JAY WAINWRIGHT is listed as the Chief Executive Officer for all Corporate Defendants. *See* **Exhibit A**.
(ii) Individual Defendant MICHAEL CHERNOW is listed as the Founder for all Corporate Defendants. *See* **Exhibit B**.

(c) Defendants' Restaurants maintain centralized labor relations and human resources, and implement the same wage and hour policies and procedures established by Defendants.

(d) Defendants' Restaurants all specialize in "sustainable seafood". *See* **Exhibit C**.

(e) Defendants' Restaurants are all advertised jointly on Defendants' common website: https://www.seamores.com/. *See* **Exhibit D**.

(f) Reservations at any of Defendants' Restaurants can be made through the same centralized "reservation system" operated by "Resy". *See* **Exhibit E**.

(g) Large reservations at any of Defendants' Restaurants can be made by emailing info@seamores.com, a centralized email for all Defendants' Restaurants. In addition, questions and complaints from customers of any of Defendants' Restaurants are directed at one employee: tom@seamores.com. *Id*.

(h) The Restaurants share the "Seamore's" trademark and brand name. *See* **Exhibit F.**

(i) Defendants' Restaurants all utilize the same logo. *Id*.

(j) Defendants sell "Seamore's" gift cards on their website, which can be used at any of Defendants' Restaurants. *See* **Exhibit G**.

(k) Customers can order food online for pickup or delivery from any of Defendants' Restaurants through one centralized webpage. *See* **Exhibit H**.

(l) Defendants' Restaurants procure their seafood from the same suppliers. *See* **Exhibit I**.

(m) The Restaurants share social media accounts on Facebook, Twitter and Instagram. *See* **Exhibit J**.

4

10. At all relevant times, each of the Corporate Defendants was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA, the NYLL, and the regulations thereunder.

11. At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs and Class Members was directly essential to the business operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

12. Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees, front-of-house and back-of-house employees (including cooks, line cooks, food preparers, servers, bussers, porters, servers, hosts, bartenders, barbacks, dishwashers, and delivery persons) employed by Defendants at Defendants' Restaurants on or after the date that is six (6) years before the filing of the Complaint ("FLSA Collective Plaintiffs").

13. At all relevant times, Plaintiff and FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them their lawful wages for all hours worked, including those in excess of forty (40) hours per workweek, including their proper overtime premium at one and a half times the regular rate for all hours worked over forty (40) in a workweek. The claims of Plaintiff stated herein are essentially the same as those of the other FLSA Collective Plaintiffs. Plaintiff is a member of the FLSA Collective.

14. The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective

5

Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## **RULE 23 CLASS ALLEGATIONS – NEW YORK**

15. Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees, front-of-house and back-of-house employees (including cooks, line cooks, food preparers, servers, bussers, porters, servers, hosts, bartenders, barbacks, dishwashers, and delivery persons) employed by Defendants at Defendants' Restaurants on or after the date that is six (6) years before the filing of the Complaint (the "Class" or "Class Members").

16. The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class Member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

17. The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class. Plaintiff is a member of the Class.

18. Plaintiff's claims are typical of those claims, which could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each

member of the Class in separate actions. All Class Members were subject to the same corporate practices of Defendants, as alleged herein, of (i) failing to pay them their wages for all hours worked, including those worked in excess of forty (40) per workweek, due to Defendants' policy of time-shaving, (ii) failing to pay spread-of-hours premium for all hours worked above ten (10) hours per day, (iii) failing to provide proper wage and hour statements per requirements of the New York Labor Law, and (iv) failing to provide wage and hour notices per requirements of the New York Labor Law. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

19. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices, and procedures.

20. Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation, and have previously represented plaintiffs in wage and hour cases.

21. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the

unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

22. Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

23. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

(a) Whether Defendants employed Plaintiff and the Class members within the meaning of the New York law;

(b) What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay the Class members properly;

(c) At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay the Class members for their work;

(d) Whether Defendants properly notified Plaintiff and Class Members of their hourly rates and overtime rates;

(e) Whether Defendants properly compensated Plaintiff and Class Members for all of their hours worked due to their policy of time-shaving;

(f) Whether Defendants properly paid Plaintiff and Class Members their spread of hours premiums;

(g) Whether Defendants provided proper wage notice, at date of hiring and dates of all wage changes thereafter, to all non-exempt employees per requirements of the New York Labor Law; and

(h) Whether Defendants provided proper wage statements informing all non-exempt employees of information required to be provided on wage statements under the New York Labor Law.

## STATEMENT OF FACTS

24. On or around June 30, 2021, Plaintiff STEPHANI GALVEZ CHAVEZ was hired by Defendants to work as a Dishwasher at Defendants' "Seamore's" Restaurant in Chelsea, located at 161 8th Ave, New York, NY 10011. Plaintiff was eventually promoted to a Salad Preparer and

eventually promoted further to a Line Cook, until she was laid-off on or around January 1, 2023 because she requested time off.

25. Although Plaintiff worked primarily at Defendants' Chelsea location, Plaintiff also worked at Defendants' Upper East Side location at 1278 3rd Ave, New York, New York 10021, their Market Bar location at 152 W 52nd at Urbanspace, New York, NY 10019, and their now-closed NoLita location which used to be at 390 Broome St, New York, NY 10013, when required to by Defendants.

26. It is common practice for employees and managers of Defendants' Restaurants to interchange between different locations, when required to by Defendants.

27. From the beginning of her employment with Defendants until August 2021, Plaintiff was scheduled to work five (5) days per week, Mondays to Fridays, eight (8) hours per day, from 10:00 a.m. to 6:00 p.m., for a total of forty (40) hours per week.

28. From August 2021 until the end of her employment with Defendants, Plaintiff was scheduled to work five (5) days per week, Mondays to Fridays, seven (7) hours per day, from 10:00 a.m. to 5:00 p.m., for a total of thirty-five (35) hours per week.

29. In addition to the above schedules, Defendants additionally regularly required Plaintiff to stay past her scheduled shift and perform additional work throughout her employment. As a result of this additional required work, (i) Plaintiff worked up to approximately seventy (70) hours per week, and (ii) Plaintiff regularly worked days with a spread of ten or more hours.

30. From the beginning of her employment with Defendants, Plaintiff, as a Dishwasher, was paid at an hourly rate of seventeen dollars ($17) per hour. From her first promotion to Salad Preparer in November 2021 until July 2022, Plaintiff was paid at an hourly rate of nineteen dollars ($19) per

hour. From her second promotion to Line Cook in July 2022 until the end of her employment, Plaintiff was paid at an hourly rate of twenty dollars ($20) per hour.

31. Throughout her employment, Plaintiff was not properly compensated for all hours worked due to Defendants' policy of time shaving. Specifically, Plaintiff was often required by Defendants to work up to seventy (70) hours per week, but when Defendants' and their managers noticed that Plaintiff was working well beyond forty (40) hours per week, they began to clock her out manually to avoid paying her further overtime for the week, with no regard to the hours she actually worked.

32. Further, in some of the above instances, Defendants had manually clocked Plaintiff out before Plaintiff hit forty (40) hours in a week, to avoid paying Plaintiff overtime altogether, despite Plaintiff working over forty (40) hours these weeks.

33. Throughout her employment with Defendants, Plaintiff was not properly compensated at the overtime premium of one and one-half times her regular rate of pay for all hours worked in excess of forty (40) hours per week, as required under the FLSA and the NYLL. Similarly, FLSA Collective Plaintiffs and Class Members were not paid overtime premiums for all hours worked beyond 40 hours per week.

34. Defendants knew that requiring Plaintiff to perform off-the-clock work would cause her weekly hours to go well beyond forty (40) hours, as Defendants were the ones to (i) create Plaintiff's schedules of thirty-five (35) to forty (40) hours every week and (ii) require Plaintiff to perform off-the-clock work every week, in amounts which would result in Plaintiff working over forty (40) hours.

35. Defendants knew that Plaintiff was not being paid for all overtime hours worked, as Defendants (i) required Plaintiff to perform work for over forty (40) hours per week, (ii) actively tracked Plaintiff's weekly hours in order to manually clock her out, while still requiring Plaintiff to continue

working, to limit and constrain her overtime premium pay, or avoid paying overtime altogether, and (iii) compensated Plaintiff, every week, for only the amount of hours which Plaintiff worked while on-the-clock, rather than the full amount of hours Defendants knowingly required Plaintiff to work. Therefore, Defendants knew (i) that their policy of requiring Plaintiff to perform such amounts of unpaid work every week would always result in uncompensated overtime wages for Plaintiff and (ii) that Plaintiff was not being paid for all hours worked.

36. Throughout her employment, Plaintiff regularly worked days with a spread of ten (10) or more hours. However, Defendants failed to provide Plaintiff any spread of hours premiums for these days, as required under the NYLL.

37. Defendants knew that Plaintiff worked days with a spread of ten (10) or more hours as Defendants were the ones to require Plaintiff to perform such amounts of work. Therefore, Defendants knew that Plaintiff should have been compensated spread of hours premiums for all workdays with a spread of ten (10) or more hours.

38. Defendants knowingly and willfully operated their business with a policy of not paying Plaintiff, FLSA Collective Plaintiffs and Class Members their proper wages for all hours worked, including overtime wages for hours worked in excess of forty (40) per workweek, due to Defendants' policy of time shaving, in violation of the FLSA and the NYLL.

39. Defendants knowingly and willfully operated their business with a policy of not paying spread of hours premiums to Plaintiff and Class Members for each workday with a spread of ten (10) or more hours, in violation of the NYLL.

40. Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements as required under the NYLL. Defendants failed to reflect the actual number of hours worked by Plaintiff and Class Members for each pay period.

41. In failing to provide proper wage statements and notices to Plaintiff and Class members, as required under the Wage Theft Protection Act ("WTPA"), Defendants have generated a concrete harm to an interest identified by the New York State legislature. Defendants' failure to provide these documents frustrates New York's objective of, and Plaintiff's interest in, ensuring that employees receive all wages owed. Despite Defendants' conduct, there is a reason why the New York legislature concluded that enacting the WTPA's wage notice and wage statement provisions would "far better protect workers' rights and interests" than existing penalties. *See* N.Y. Spons. Mem., 2010 S.B. 8380.

42. Written notices function as a means of apprising employees of their rights and of their employer's obligations towards them, empowering employees to advocate for themselves. Deprivation of such notices necessarily entails a significant risk of harm to the employees' concrete interest in being paid properly.

43. Here, Defendants' failure goes beyond generating a risk of harm to Plaintiff and Class Members. Defendants' conduct actually harmed Plaintiff and Class Members by weakening their ability to contest the sufficiency of Defendants' wage payments to them.

44. For example, Plaintiff has alleged that she performed work for which she was not compensated properly. This means she has alleged that the amount of wages listed on the wage statements she received from Defendants were inaccurate, having understated the amount of wages Plaintiff actually deserved. Withholding *accurate* wage statements, therefore, allowed Defendants to misrepresent themselves as having paid Plaintiff and other employees all wages due when Defendants had not, in fact, done that.

45. Had the wage statements accurately represented Plaintiff's actual hours worked, they would have revealed a clear, unambiguous, and indisputable discrepancy between the amount

of wages that Plaintiff earned and the rate of hourly pay for which she was paid—thus providing Plaintiff with incontrovertible proof of Defendants' FLSA and NYLL violations. Such proof would have permitted Plaintiff and other similarly wronged employees to readily prevail on a motion for summary judgment early in the litigation, without the need to conduct much discovery, since accurate wage statements would have effectively constituted a written admission by Defendants of their wrongdoing.

46. This legal leverage alone might well have incentivized Defendants to make Plaintiff and other employees whole—in order to avert what would be a hopelessly uphill litigation fight.

47. Regardless of what Defendants would have done with Plaintiff in possession of such leverage, Plaintiff has described what is a certainty of a harm, not a mere risk, because it is certain that incontrovertible documentary evidence of Defendants' wage violations would have placed Defendants in a far weaker legal position and Plaintiff in a far stronger one. Plaintiff has been concretely injured because Defendants' deceptive representations on Plaintiff's wage statements have prevented this outcome.

48. Of course, Defendants WTPA violations could not prevent Plaintiff from bringing the instant action. But there is a substantial difference between prosecuting a lawsuit based on contestable testimony and doing so based on incontestable documentary evidence provided by the defendant itself, which is what Defendants' WTPA violations deprived Plaintiff of.

49. Defendants may retort that accurate wage statements would not have placed them in a weaker position because the wage statements they did provide were, in fact, accurate. But that is an argument for another day, as the Court must accept Plaintiff's allegations as true at this stage of the litigation.

50. There is no question that Plaintiff would be in a far better position than she is now had she received compliant wage statements. At worst, Plaintiff would have the means to readily prevail on a summary judgment motion, simply on the basis of documentary evidence generated by Defendants themselves. At best, Plaintiff might have avoided litigation altogether, since the threat thereof might have incentivized Defendants to just make Plaintiff whole.

51. Because either of the foregoing outcomes would have been preferable to the status quo, Plaintiff and Class Members were concretely harmed when Defendants failed to provide them with the accurate wage statements that would have facilitated one of the preferred outcomes. The loss of an opportunity to readily prevail on a summary judgment motion with fairly little expenditure of resources is a concrete injury.

52. Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements to Plaintiff and Class Members, in violation of the.

53. Defendants knowingly and willfully operated their business with a policy of not providing proper wage and hour notices to Plaintiff and Class Members, in violation of the NYLL.

54. Due to these unlawful acts of Defendants, Plaintiff suffered liquidated damages in an amount not presently ascertainable. In addition, Plaintiff is entitled to reasonable attorney's fees, statutory penalties and costs and disbursements of the action.

55. Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs and Class members, in this litigation and have agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

### COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT

56.     Plaintiff realleges and reaver all the above allegations of this Class and Collective Action Complaint as if fully set forth herein.

57.     At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

58.     At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

59.     At all relevant times, Corporate Defendants had gross annual revenues in excess of $500,000.

60.     At all relevant times, Defendants had a policy and practice of failing to pay Plaintiff and FLSA Collective Plaintiffs their proper wages for all hours worked, including those in excess of forty (40) per workweek, due to Defendants' policy of time-shaving.

61.     Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

62.     Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs for all

hours worked, including overtime hours, when Defendants knew or should have known such was due.

63. Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

64. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

65. Due to the intentional, willful and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid minimum wage and overtime wages, plus an equal amount as liquidated damages.

66. Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II

## VIOLATION OF THE NEW YORK LABOR LAW

67. Plaintiff realleges and reavers all the above allegations of this Class and Collective Action Complaint as if fully set forth herein.

68. At all relevant times, Plaintiff and Class Members were employed by Defendants within the meaning of the New York Labor Law §§ 2 and 651.

69. Defendants knowingly and willfully violated Plaintiff's and Class members' rights by failing to pay them proper wages in the lawful amount for hours worked due to time shaving, in violation of the New York Labor Law.

70. Defendants knowingly and willfully violated Plaintiff's and Class members' rights by failing to pay them overtime compensation at the rate of not less than one and one-half times

the regular rate of pay for each hour worked in excess of forty (40) hours in a workweek, as required under the New York Labor Law.

71. Defendants knowingly and willfully violated Plaintiff's and Class Members' rights by failing to pay them their spread of hours premiums for workdays with a spread of ten (10) or more hours, as required under the New York Labor Law.

72. Defendants knowingly and willfully failed to provide proper wage statements to Plaintiff and Class Members as required under the New York Labor Law. Defendants are required to provide itemized listings of deductions taken on each wage statement. Defendants also provided fraudulent wage statements that failed to accurately reflect the number of hours worked and their proper compensation, including overtime.

73. Defendants knowingly and willfully failed to provide proper wage and hour notices to Plaintiff and Class Members as required under the New York Labor Law.

74. Due to Defendants' New York Labor Law violations, Plaintiff and Class Members are entitled to recover from Defendants unpaid wages, including overtime, due to time-shaving, unpaid spread of hours premiums, reasonable attorneys' fees, liquidated damages, statutory penalties and costs and disbursements of the action, pursuant to the New York Labor Law.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of herself, FLSA Collective Plaintiffs and Class Members, respectfully requests that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

b. An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by

   law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c. An award of unpaid wages, including overtime, due to Defendants' policy of time-shaving, due under the FLSA and the NYLL;

d. An award of unpaid spread of hours premiums due under the NYLL;

e. An award of statutory penalties as a result of Defendants' failure to comply with the NYLL wage notice and wage statement requirements;

f. An award of liquidated damages as a result of Defendants' willful failure to pay the proper overtime wages and minimum wages, pursuant to the FLSA;

g. An award of liquidated damages as a result of Defendants' willful failure to pay the proper overtime wages, minimum wage, and spread of hours premium, pursuant to the NYLL;

h. An award of pre-judgment and post-judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees;

i. Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

j. Designation of this action as a class action pursuant to F.R.C.P. 23;

k. Designation of Plaintiff as Representative of the Class; and

l. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands trial by jury on all causes of action and issues so triable as of right by jury.

Dated: August 11, 2023                                             Respectfully submitted,

                                                             By:   /s/ C.K. Lee
                                                                   C.K. Lee, Esq.

                                                                   **LEE LITIGATION GROUP, PLLC**
                                                                   C.K. Lee (CL 4086)
                                                                   Anne Seelig (AS 3976)
                                                                   148 West 24th Street, Eighth Floor
                                                                   New York, NY 10011
                                                                   Tel.: (212) 465-1188
                                                                   Fax: (212) 465-1181
                                                                   *Attorneys for Plaintiff,*
                                                                   *FLSA Collective Plaintiffs,*
                                                                   *and the Class*